**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **CRIMINAL NO. 06-134** |
| **JMG EXCAVATING CO.** | : | |

**GOVERNMENT'S CHANGE OF PLEA**
**AND SENTENCING MEMORANDUM**

The United States of America, by and through its attorneys, Patrick L. Meehan, United States Attorney for the Eastern District of Pennsylvania, and Jennifer J. Chun, Assistant United States Attorney, hereby respectfully submits its change of plea and sentencing memorandum for a guilty plea hearing scheduled for May 18, 2006.

**CHANGE OF PLEA**

**I.  INTRODUCTION**

On March 23, 2006, the United States Attorney filed an information charging defendant JMG Excavating Co. ("JMG") with one count of mail fraud and aiding and abetting, in violation of Title 18, United States Code, Sections 1341 and 2.  JMG waived prosecution by indictment and is pleading guilty to the information.

**II.  ELEMENTS OF THE OFFENSES**

In order to prove mail fraud, in violation of 18 U.S.C. § 1341, the government must prove the following elements beyond a reasonable doubt:

1.    Defendant knowingly devised or participated in a scheme to defraud or to

obtain money or property by materially false or fraudulent pretenses,

representations or promises;

2.      The defendant acted with the specific intent to defraud; and

3.      In advancing, furthering, or carrying out the scheme, the defendant used

the mails or caused the mails to be used.

## III.  PLEA AGREEMENT

The full terms of the plea agreements are contained within the plea itself which is

attached as Exhibit A.  The essential terms of the plea agreement are as follows:

1.      The defendant agrees to plead guilty to one count of an Indictment or

Information, waiving prosecution by Indictment, charging it with one count of mail fraud, in

violation of Title 18, United States Code, Section 1341.  The charges arise from a scheme by the

defendant to fraudulently obtain money from the Southeastern Pennsylvania Transportation

Authority (SEPTA) during a series of construction contracts performed by defendant between

August 1997 and February 2004.  In these contracts, SEPTA and the United States Department of

Transportation required that a specified percentage of the contract work be performed by a

qualified Disadvantaged Business Enterprise (DBE).  During the performance of these contracts,

and to obtain money from SEPTA, defendant falsely certified to SEPTA that it was in

compliance with SEPTA's DBE Program.   The defendant further acknowledges its waiver of

rights, as set forth in the attachment to this agreement.

2.      The defendant agrees to pay the special victims/witness assessment in the

amount of $400 before the time of sentencing and shall provide a receipt from the Clerk to the

government before sentencing as proof of this payment.

3.      The defendant understands and agrees that, as a condition precedent to this agreement, it was required to complete truthfully and accurately a financial disclosure form listing all of its income, assets, liabilities and financial interests, held directly or indirectly.

4.      The defendant agrees to the entry of an order of restitution at time of sentencing in the amount of $1,277,152.  Defendant agrees to surrender to the United States on April 1, 2006 or the date of the entry of the guilty plea, if later, the sum of $100,000 which represents the first payment towards the restitution order.  Defendant further agrees that, based upon its present financial condition, it can reasonably make quarterly annual payments of $25,000 towards restitution, which will commence at the end of the first full quarter following the date of the sentencing.

5.      The defendant consents to the immediate issuance of an order of debarment by the United States Department of Transportation (DOT) for a period of five years and waives all rights to appeal the debarment order.   Defendant acknowledges herein that, by separate agreement, JMG president Brian Gro has voluntarily agreed to an order of  debarment by the DOT for a period of five years and waives all right to appeal the debarment order.

6.      As a remedial measure, the defendant agrees, as part of its sentence, that it will have Disadvantaged Business Enterprise (DBE) participation on all contract work, which requires some service by a subcontractor, performed by defendant during its term of probation, whether  funded by federal, state, or local government or agency or by private party. The committed DBE participation will be 20% of the defendant's original contract or 100% of all subcontract work required under the contract if less than 20% of the defendant's original contract requires service by a subcontractor.  This requirement applies to all contracts, signed on or after

the date of sentencing.  Defendant agrees to provide notice to the U.S. Probation Office if, after

good faith efforts to comply, defendant enters into a contract without meeting the voluntary DBE

participation commitment described in this paragraph.

Defendant agrees to report quarterly to the U.S. Probation Office the following

information regarding all contracts completed in that quarter: the project name and customer; the

name of the DBE used; a description of work performed by the DBE; the total contract amount;

and the amount paid to the DBE.

7.      Defendant waives any claim under the Hyde Amendment, 18 U.S.C.

§3006A (Statutory Note), for attorney's fees and other litigation expenses arising out of the

investigation or prosecution of this matter.

8.      At the time of sentencing, the government will recommend the following

sentence: five years probation, no criminal fine, restitution as set forth in paragraph five of this

agreement, payment of the mandatory special assessment, and paragraphs 5, 6, and 7 of this plea

agreement constitute appropriate conditions of probation.

9.      The parties agree and stipulate that the amount of loss for purpose of  the

Sentencing Guidelines is $1,277,152, and that this amount shall also be used to determine the

appropriate restitution to be ordered at time of sentencing.

10.     Pursuant to § 8C2.5(g)(2), the corporation has fully cooperated in the

investigation and clearly demonstrated recognition and affirmative acceptance of responsibility

for its criminal conduct, decreasing the culpability score by 2 points.

11.     The parties agree that no presentence report is necessary or required pursuant to Federal Rule of Criminal Procedure 32(c)(1)(A)(ii).  Subject to the approval of the Court, the parties agree that sentencing can proceed at the time the plea of guilty is entered.

12.     In exchange for the undertakings made by the government in entering this plea agreement, the defendant voluntarily and expressly waives all rights to appeal or collaterally attack the defendant's conviction, sentence, or any other matter relating to this prosecution, whether such a right to appeal or collateral attack arises under 18 U.S.C. § 3742, 28 U.S.C. § 1291, 28 U.S.C. § 2255, or any other provision of law.

a.     Notwithstanding the waiver provision above, if the government appeals from the sentence, then the defendant may file a direct appeal of its sentence.

b.     If the government does not appeal, then notwithstanding the waiver provision set forth in this paragraph, the defendant may file a direct appeal but may raise only claims that:

1.     the defendant's sentence exceeds the statutory maximum;
or

2.     the sentencing judge erroneously departed upward from the otherwise applicable sentencing guideline range.

3.     the sentencing judge, exercising the Court's discretion pursuant to United States v. Booker, 125 S. Ct. 738 (2005), imposed an unreasonable sentence above the final Sentencing Guideline range determined by the Court.

5

If the defendant does appeal pursuant to this paragraph, no issue may be presented by the defendant on appeal other than those described in this paragraph.

## IV.  MAXIMUM PENALTIES

The defendant understands, agrees and has had explained to it by counsel that the Court may impose the following statutory maximum sentence on each count: a $500,000 fine, 5 years probation, and a mandatory $400 special assessment.  Full restitution in the amount of $1,277,152 may also be ordered._____

## V.  FACTUAL BASIS

The government would prove the following facts beyond a reasonable doubt:

In 1980, the United States Department of Transportation ("USDOT") issued regulations in connection with a program to increase the participation of minority and disadvantaged business enterprises ("DBEs") in federally-funded public construction contracts, hereinafter referred to as the "DBE Program."  The USDOT delegated the administration of the DBE Program to the city and state agencies that were recipients of USDOT construction grant funds.

The Federal Transit Administration ("FTA") is an agency within the USDOT that provided financial assistance in the form of construction grants to transit agencies for the construction and maintenance of transit systems.  Recipients of USDOT construction grants were required to establish a DBE program, pursuant to which they would set specific goals for the percentage of work to be awarded to DBEs, and ensure that good faith efforts were made by general contractors to employ qualified DBE subcontractors.

6

The Southeastern Pennsylvania Transportation Authority ("SEPTA") was a recipient of USDOT construction grants through the FTA and established a DBE Program. Under the SEPTA-DBE Program, general contractors were permitted to count toward the attainment of their DBE percentage goals only funds paid to legitimate DBE companies that performed a "commercially useful function" in the execution of a contract.

In accordance with USDOT regulations, a DBE company performed a "commercially useful function" when it: (a) was responsible for the execution of a distinct element of the work of a contract; (b) carried out its responsibilities by actually performing, managing and supervising the work involved; and (c) furnished all supervision, labor, tools, equipment, materials and supplies necessary to perform that distinct element of the work of the contract.  In order to participate in the SEPTA-DBE Program, a company had to be certified as a DBE by SEPTA.

In order for a company to be certified as a DBE by SEPTA, it had to demonstrate that: (a) at least 51 percent of the company was owned and controlled by one or more minorities, women, or socially and economically disadvantaged individuals; (b) the management and daily business operations of the company were controlled by one or more such individuals; and ©) the company had sufficient resources and employees to fulfill subcontracts.

Pursuant to the SEPTA-DBE Program and USDOT regulations, a DBE was prohibited from subcontracting work it was awarded in connection with its DBE status and was required to, among other things: (a) perform the subcontracting work with its own employees and furnish to the contracting governmental agency with a certified payroll showing the wages paid to each employee on the job; (b) manage its own work, including supervising, hiring and firing of

7

employees, and perform all administrative functions using personnel responsible to or employed by the DBE at facilities or locations under the control of the DBE; and (c) negotiate prices, arrange delivery of and pay for materials required for the subcontracting work.

Pullins Dump Truck, d/b/a Eugene Pullins Truck & Equipment Rental ("Pullins") was a minority-owned construction service business located in Philadelphia, Pennsylvania. Pullins specialized in excavating and hauling services and was certified by SEPTA as a DBE.

Defendant JMG EXCAVATING CO. ("JMG") was a construction service business incorporated in Pennsylvania.  JMG specialized in construction contracting in transportation and utility industries, including paving, demolition, excavating, utilities, piping, and bridge and railroad construction services.

SEPTA documents show that between August 1997 and February 2004, JMG obtained eight contracts totaling $7,811,880 from SEPTA, which required that the defendant comply with the conditions of SEPTA's DBE Program.  The contracts required that JMG use DBE subcontractors on 16-25% of its contracts.  JMG submitted to SEPTA that one of its DBEs would be Pullins.

SEPTA and JMG records show that SEPTA made payments to JMG for its DBE subcontacted work to Pullins.  In submissions to SEPTA, JMG represented that it paid Pullins $1,538,757, when in reality Pullins performed only $261,605 in DBE work, thereby overstating the work performed by Pullins in the amount of $1,277,152.  Pullins would testify that while he performed some of the DBE work for the defendant, he did not perform the bulk of the work that was represented to SEPTA.

Pullins endorsed for defendant JMG dual party checks made payable to JMG's suppliers and Pullins, to make it appear that Pullins had performed required DBE work.  Pullins was paid a.  For endorsing the dual party checks, JMG paid Pullins 2.5 % commission on all of the DBE work that he did not actually perform.  These checks were used by JMG in submissions to SEPTA to show compliance with the DBE requirements.

JMG employees would testify that they performed the majority of the work represented to SEPTA to have been performed by Pullins.  JMG submitted by US mail utilization reports which contained the false representations concerning Pullins.

## SENTENCING

### I. SENTENCING AGREEMENT

Pursuant to the plea agreement, the parties have agreed to the following provisions regarding sentencing:

1.      The parties agree that no presentence report is necessary or required pursuant to Federal Rule of Criminal Procedure 32(c)(1)(A)(ii).  Subject to the approval of the Court, the parties agree that sentencing can proceed at the time the plea of guilty is entered.

2.      The defendant agrees to the entry of an order of restitution at time of sentencing in the amount of $1,277,152.  Defendant agrees to surrender to the United States on the date of the entry of the guilty plea, the sum of $100,000 which represents the first payment towards the restitution order.  Defendant further agrees that, based upon its present financial condition, it can reasonably make quarterly annual payments of $25,000 towards restitution, which will commence at the end of the first full quarter following the date of the sentencing.

3.     The defendant consents to the immediate issuance of an order of debarment by the United States Department of Transportation (DOT) for a period of five years and waives all rights to appeal the debarment order.   Defendant acknowledges herein that, by separate agreement, JMG president Brian Gro has voluntarily agreed to an order of debarment by the DOT for a period of five years and waives all right to appeal the debarment order.

4.     As a remedial measure, the defendant agrees, as part of its sentence, that it will have Disadvantaged Business Enterprise (DBE) participation on all contract work, which requires some service by a subcontractor, performed by defendant during its term of probation, whether  funded by federal, state, or local government or agency or by private party. The committed DBE participation will be 20% of the defendant's original contract or 100% of all subcontract work required under the contract if less than 20% of the defendant's original contract requires service by a subcontractor.  This requirement applies to all contracts, signed on or after the date of sentencing.  Defendant agrees to provide notice to the U.S. Probation Office if, after good faith efforts to comply, defendant enters into a contract without meeting the voluntary DBE participation commitment described in this paragraph.

Defendant agrees to report quarterly to the U.S. Probation Office the following information regarding all contracts completed in that quarter: the project name and customer; the name of the DBE used; a description of work performed by the DBE; the total contract amount; and the amount paid to the DBE.

5.     The parties agree and stipulate that the amount of loss for purpose of  the Sentencing Guidelines is $1,277,152, and that this amount shall also be used to determine the appropriate restitution to be ordered at time of sentencing.

10

6.      Pursuant to § 8C2.5(g)(2), the corporation has fully cooperated in the investigation and clearly demonstrated recognition and affirmative acceptance of responsibility for its criminal conduct, decreasing the culpability score by 2 points.

## II.  GOVERNMENT'S SENTENCING RECOMMENDATION

The government recommends the following sentence: five years probation, no criminal fine, restitution as set forth in paragraph five of the plea agreement, payment of the mandatory special assessment, and paragraphs 5, 6, and 7 of the plea agreement (Paragraphs 2 - 4 in the government's sentencing section of its memorandum) constitute appropriate conditions of probation.


Respectfully submitted,

PATRICK L. MEEHAN
United States Attorney



_____
JENNIFER J. CHUN
Assistant United States Attorney

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Government's Change of Plea

and Sentencing Memorandum has been served by electronic filing and hand delivery upon:

> Thomas M. Gallagher, Esq.
> Pepper Hamilton LLP
> 3000 Two Logan Square
> Eighteenth and Arch Streets
> Philadelphia, PA 19103

_____
Jennifer J. Chun
Assistant United States Attorney

Date: _____

Exhibit A

# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA          :

          v.                              :          CRIMINAL NO. 06-134

JMG EXCAVATING CO.                    :

## GUILTY PLEA AGREEMENT

       Under Rule 11 of the Federal Rules of Criminal Procedure, the government, the defendant, and the defendant's counsel enter into the following guilty plea agreement.  Any reference to the United States or the government in this agreement shall mean the Office of the United States Attorney for the Eastern District of Pennsylvania.

       1.       The defendant will appear in the United States District Court for the Eastern District of Pennsylvania, by way of counsel duly authorized, for the purpose of entering a plea of guilty to the Count specified below.

       2.       The defendant agrees to plead guilty to one count of an Indictment or Information, waiving prosecution by Indictment, charging it with one count of mail fraud, in violation of Title 18, United States Code, Section 1341.  The charges arise from a scheme by the defendant to fraudulently obtain money from the Southeastern Pennsylvania Transportation

Authority (SEPTA) during a series of construction contracts performed by defendant between August 1997 and February 2004.  In these contracts, SEPTA and the United States Department of Transportation required that a specified percentage of the contract work be performed by a qualified Disadvantaged Business Enterprise (DBE).  During the performance of these contracts, and to obtain money from SEPTA, defendant falsely certified to SEPTA that it was in compliance with SEPTA's DBE Program.   The defendant further acknowledges its waiver of rights, as set forth in the attachment to this agreement.

   3. The defendant agrees to pay the special victims/witness assessment in the amount of $400 before the time of sentencing and shall provide a receipt from the Clerk to the government before sentencing as proof of this payment.

   4. The defendant understands and agrees that, as a condition precedent to this agreement, it was required to complete truthfully and accurately a financial disclosure form listing all of its income, assets, liabilities and financial interests, held directly or indirectly.

   5. The defendant agrees to the entry of an order of restitution at time of sentencing in the amount of $1,277,152.  Defendant agrees to surrender to the United States on April 1, 2006 or the date of the entry of the guilty plea, if later, the sum of $100,000 which represents the first payment towards the restitution order.  Defendant further agrees that, based upon its present financial condition, it can reasonably make quarterly annual payments of $25,000 towards restitution, which will commence at the end of the first full quarter following the date of the sentencing.

   6. The defendant consents to the immediate issuance of an order of debarment by the United States Department of Transportation (DOT) for a period of five years

and waives all rights to appeal the debarment order.   Defendant acknowledges herein that, by

separate agreement, JMG president Brian Gro has voluntarily agreed to an order of  debarment by

the DOT for a period of five years and waives all right to appeal the debarment order.

7.      As a remedial measure, the defendant agrees, as part of its sentence, that it

will have Disadvantaged Business Enterprise (DBE) participation on all contract work, which

requires some service by a subcontractor, performed by defendant during its term of probation,

whether  funded by federal, state, or local government or agency or by private party. The

committed DBE participation will be 20% of the defendant's original contract or 100% of all

subcontract work required under the contract if less than 20% of the defendant's original contract

requires service by a subcontractor.   This requirement applies to all contracts, signed on or after

the date of sentencing.  Defendant agrees to provide notice to the U.S. Probation Office if, after

good faith efforts to comply, defendant enters into a contract without meeting the voluntary DBE

participation commitment described in this paragraph.

Defendant agrees to report quarterly to the U.S. Probation Office the following

information regarding all contracts completed in that quarter: the project name and customer; the

name of the DBE used; a description of work performed by the DBE; the total contract amount;

and the amount paid to the DBE.

8.      Defendant waives any claim under the Hyde Amendment, 18 U.S.C.

§3006A (Statutory Note), for attorney's fees and other litigation expenses arising out of the

investigation or prosecution of this matter.

9.      At the time of sentencing, the government will recommend the following

sentence: five years probation, no criminal fine, restitution as set forth in paragraph five of this

3

agreement, payment of the mandatory special assessment, and paragraphs 5, 6, and 7 of this Agreement constitute appropriate conditions of probation.

10.    The defendant understands, agrees and has had explained to it by counsel that the Court may impose the following statutory maximum sentence on each count: a $500,000 fine, 5 years probation, and a mandatory $400 special assessment.  Full restitution in the amount of $1,277,152 may also be ordered.

11.    The defendant may not withdraw its plea because the Court declines to follow any recommendation, motion or stipulation by the parties to this agreement.  No one has promised or guaranteed to the defendant what sentence the Court will impose.

12.    Pursuant to USSG § 6B1.4, the parties enter into the following stipulations under the Sentencing Guidelines Manual effective November 1, 2003.  It is understood and agreed that: (1) the parties are free to argue the applicability of any other provision of the Sentencing Guidelines, including offense conduct, offense characteristics, criminal history, adjustments and departures; (2) these stipulations are not binding upon either the Probation Department or the Court; and (3) the Court may make factual and legal determinations that differ from these stipulations and that may result in an increase or decrease in the Sentencing Guidelines range and the sentence that may be imposed:

(a) The parties agree and stipulate that the amount of loss for purpose of the Sentencing Guidelines is $1,277,152, and that this amount shall also be used to determine the appropriate restitution to be ordered at time of sentencing.

(b) Pursuant to § 8C2.5(g)(2), the corporation has fully cooperated in the investigation and clearly demonstrated recognition and affirmative acceptance of responsibility

4

for its criminal conduct, decreasing the culpability score by 2 points.

13.     The parties agree that no presentence report is necessary or required pursuant to Federal Rule of Criminal Procedure 32(c)(1)(A)(ii).  Subject to the approval of the Court, the parties agree that sentencing can proceed at the time the plea of guilty is entered.

14.     In exchange for the undertakings made by the government in entering this plea agreement, the defendant voluntarily and expressly waives all rights to appeal or collaterally attack the defendant's conviction, sentence, or any other matter relating to this prosecution, whether such a right to appeal or collateral attack arises under 18 U.S.C. § 3742, 28 U.S.C. § 1291, 28 U.S.C. § 2255, or any other provision of law.

a.     Notwithstanding the waiver provision above, if the government appeals from the sentence, then the defendant may file a direct appeal of its sentence.

b.     If the government does not appeal, then notwithstanding the waiver provision set forth in this paragraph, the defendant may file a direct appeal but may raise only claims that:

1.     the defendant's sentence exceeds the statutory maximum; or

2.     the sentencing judge erroneously departed upward from the otherwise applicable sentencing guideline range.

3.     the sentencing judge, exercising the Court's discretion pursuant to United States v. Booker, 125 S. Ct. 738 (2005), imposed an unreasonable sentence above the final Sentencing Guideline range determined by the Court.

If the defendant does appeal pursuant to this paragraph, no issue may be presented by the defendant on appeal other than those described in this paragraph.

15.     The defendant is satisfied with the legal representation provided by the defendant's lawyer; the defendant and this lawyer have fully discussed this plea agreement; and the defendant is agreeing to plead guilty because the defendant admits that it is guilty.

16.     Defendant will acknowledge acceptance of this plea agreement by the signature of its counsel and of a responsible corporate officer.  Defendant shall provide to the government for attachment to this plea agreement a notarized resolution of defendant's Board of Directors authorizing the corporation to enter a plea of guilty and authorizing that responsible corporate officer to execute this agreement.

17.     It is agreed that the parties' guilty plea agreement contains no additional

promises, agreements or understandings other than those set forth in this written guilty plea

agreement, and that no additional promises, agreements or understandings will be entered into

unless in writing and signed by all parties.


                                    PATRICK L. MEEHAN
                                    United States Attorney



_____          _____
Officer                                     LINDA DALE HOFFA
JMG Construction, Inc.                      Chief, Criminal Division
                                            Assistant United States Attorney



_____          _____
THOMAS M. GALLAGHER                         ROBERT E. GOLDMAN
Counsel for Defendant                       Assistant United States Attorney


Date:        2006



7

Attachment

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **CRIMINAL NUMBER** |
| **JMG CONSTRUCTION, INC.** | : | |

## ACKNOWLEDGMENT OF RIGHTS

JMG Construction, Inc. (hereafter "the Organization") hereby acknowledge that there are certain rights that the organization  will be giving up by pleading guilty.

1.     The Organization understands that it does not have to plead guilty.

2.     The Organization may plead not guilty and insist upon a trial.

3.     At that trial, the Organization understands

    a.     that the Organization would have the right to be tried by a jury that would be selected from the Eastern District of Pennsylvania and that along with our attorney, the Organization would have the right to participate in the selection of that jury;

    b.     that the jury could only convict the Organization if all twelve jurors agreed that they were convinced of the Organization's guilt beyond a reasonable doubt;

    c.     that the government would have the burden of proving the Organization's guilt beyond a reasonable doubt and that the Organization would not have to prove anything;

    d.     that the Organization would be presumed innocent unless and until such time as the jury was convinced beyond a reasonable doubt that the government had proven that the Organization was guilty;

    e.     that the Organization would have the right to be represented by a lawyer at this trial and at any appeal following the trial, and that if the Organization could not afford to hire a lawyer, the court would appoint one free of charge;

   f.  that through our lawyer the Organization  would have the right to confront and cross examine the witnesses against it;

   g.  that testimony could be presented by the Organization in our own defense and the Organization could subpoena witnesses to testify in our defense;

   h.  that the Organization would not have to present any defense if it did not want to and that if it did not present any evidence, the jury could not hold that against the Organization.

  4.  The Organization understands if it pleads guilty, there will be no trial and it would be giving up all of the rights listed above.

  5.  The Organization understands that if it decides to enter a plea of guilty, the judge will ask our representative and/or attorney questions under oath and that if the Organization presents a lie in answering those questions, it could be prosecuted for the crime of perjury, that is, for lying under oath.

  6.  The Organization understands that if it pleads guilty, it has waived its right to appeal, except as set forth in appellate waiver provisions of our plea agreement.

  7.  Understanding that the Organization has all these rights and that by pleading guilty the Organization is giving them up, the Organization still wishes to plead guilty.


_____
Officer, JMG Excavating Co.
Defendant


_____
THOMAS M. GALLAGHER
Counsel for the Defendant